UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMUEL S.,[1]

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

24-CV-388 (JLS)

## DECISION AND ORDER

Plaintiff Samuel S. brought this action under 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 11. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 15, 16. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

_____

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB"), filed on July 29, 2021.[2]  Tr. 202–03.[3]  Plaintiff's application was initially denied, as well as upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ").  Tr. 49–78, 85–111.  Following the hearing, at which Plaintiff was represented by counsel, ALJ Thomas Merrill issued a decision finding that Plaintiff was not disabled.  Tr. 15–48.  Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action.  Tr. 1–7; Dkt. 1.

## LEGAL STANDARDS

### I.   DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive when supported by substantial evidence.  *See Biestek v. Berryhill*, 589 U.S. 97, 99 (2019).  "Substantial evidence" is "more than a mere scintilla" and "means such

---

[2] Plaintiff applied for DIB, which requires a claimant to show that he or she became disabled while meeting the Act's insured status requirements.  *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022).

[3] The filing at Dkt. 4 is the transcript of the proceedings before the Social Security Administration.  All references to Dkt. 4 are hereby denoted "Tr. ___."

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (explaining that the Court's review for legal error ensures "that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act." (citation modified)).

## II.    DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520; *see Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* § 404.1572. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 404.1520(b).

3

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(d). If such criteria are met, then the claimant is declared disabled. *Id.*

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his or her RFC, age,

4

education, and work experience. *Id.* § 404.1560(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given his or her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.     THE ALJ'S DECISION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 25, 2019. Tr. 20. The ALJ also found that Plaintiff suffered from the following impairments: obesity, carpal tunnel syndrome, osteoarthritis of the left knee, obstructive sleep apnea, hyperlipidemia, hypertension, hypothyroidism, major depressive disorder, and generalized anxiety disorder. *Id.* The ALJ concluded, however, that those impairments were not severe because they did not, or were not expected to, significantly limit Plaintiff's ability to perform basic work-related activities for a period of 12 consecutive months. Tr. 21. As such, according to the ALJ, Plaintiff had not been under a disability since December 25, 2019. Tr. 26.

### II.    PLAINTIFF'S ARGUMENT

Plaintiff makes a single argument for judgment in his favor. *See* Dkt. 11-1 at 9–30. More specifically, Plaintiff says that the ALJ erred at step two of the disability determination by finding that his major depressive disorder and

generalized anxiety disorder were non-severe impairments. *See id.* For the reasons that follow, this Court disagrees.

## III.  ANALYSIS

At step two of the disability determination, "the ALJ determines whether the claimant has an impairment, or combination of impairments, that is 'severe' within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities." *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 427 (W.D.N.Y. 2022). Although the claimant bears the burden of establishing severity, such burden "is *de minimis* and is meant only to screen out the weakest of claims." *See id.* at 427–28 (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).

Regarding a claimant's alleged mental impairments, "the regulations instruct the ALJ to apply a 'special technique' in determining whether [those] impairments are severe." *Sharon J. v. Comm'r of Soc. Sec.*, 716 F. Supp. 3d 59, 64 (W.D.N.Y. 2024). This special technique "instructs the ALJ to consider [four] broad areas of mental [work-related] functioning." *See id.* Those four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3). If the ALJ does not find more than a "mild" limitation in any of those four areas, then the claimant's medically determinable mental impairments are non-severe. *See id.* § 404.1520a(d)(1).

Here, the ALJ considered Plaintiff's major depressive disorder and generalized anxiety disorder and concluded that they were non-severe impairments because there was "little evidence in the record that they cause[d] more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities." *See* Tr. 23. More specifically, the ALJ found that Plaintiff had: (1) no limitation in understanding, remembering, or applying information; (2) no limitation in interacting with others; (3) no limitation in concentrating, persisting, or maintaining pace; and (4) no limitation in adapting or managing himself. *See* Tr. 24.

The ALJ's findings mirrored the opinions of state agency review consultants L. Dekeon, PhD, and V. Ng, PhD, as well as the opinion of consultative examiner Christine Ransom, PhD. *See* Tr. 58–59 (relevant portion of Dr. Dekeon's opinion); Tr. 74–76 (relevant portion of Dr. Ng's opinion); Tr. 628–29 (relevant portion of Dr. Ransom's opinion). They also were supported by Plaintiff's longitudinal treatment history and reported activities of daily living. *See, e.g.*, Tr. 556–619 (treatment records indicating largely normal mental status examinations and current employment without restrictions); Tr. 628 (acknowledging Plaintiff's reports that he could dress, bathe, groom himself, cook and prepare food, clean, do laundry, shop, manage money, operate a motor vehicle, stay in touch with friends, attend church, and go out to eat).

Accordingly, the ALJ's step two determination was supported by substantial evidence. *See, e.g.*, *Angela M.K. v. Kijakazi*, 2022 WL 4591844, at *3 (N.D.N.Y.

Sept. 30, 2022) (concluding that the ALJ's step two determination was supported by substantial evidence where it was based on the plaintiff's "largely normal mental status examinations, [her] symptoms and treatment, the longitudinal record, the medical opinions, the majority of which reflected no more than mild limitations, . . . [and her] daily activities, which did not reflect any functional limitation regarding basic work activities" (citation modified)).

Plaintiff nevertheless argues that this Court should reach the opposite conclusion for two reasons. *See* Dkt. 11-1 at 12–30. The Court will address each argument in turn.

First, Plaintiff argues that the ALJ improperly evaluated the opinions of treating providers Maria Cartagena, MD, and Brian Rainforth, LCSW, both of whom concluded that Plaintiff had disabling limitations in his mental work-related functioning. *See id.* Under the regulations, an ALJ must articulate how he or she considered certain factors when evaluating medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c(a). Those factors are: (1) supportability; (2) consistency; (3) relationship with the claimant (which has five sub-factors of its own); (4) specialization; and (5) any "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *See id.* § 404.1520c(c).

The ALJ is tasked with analyzing medical opinions at the source-level, meaning that he or she need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *See id.*

8

§ 404.1520c(b)(1). What is more, an ALJ need only explain his or her analysis with respect to the supportability and consistency factors, because they are the "most important factors," but need not expound on the remaining three. *See id.* § 404.1520c(c).

With respect to the supportability factor, the regulations provide that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion or prior administrative medical finding, the more persuasive the medical opinion or prior administrative medical finding will be." *Id.* § 404.1520c(c)(1) (citation modified). With respect to the consistency factor, the regulations provide that "the more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." *Id.* § 404.1520c(c)(2) (citation modified).

In this case, the ALJ found Dr. Cartagena's opinion unpersuasive because it was "not supported by [her] own treatment notes that consistently demonstrate[d] that medications were working well to control [Plaintiff's] symptoms, he was able to tolerate daily stressors, his focus and attention were intact, and [his] mental status examination results were consistently unremarkable." Tr. 25. The ALJ also determined that Dr. Cartagena's opinion was "not consistent with the other evidence of record, including the examination results and opinion of Dr. Ransom, [Plaintiff's] ability to take multiple trips, his admission of only mild, much

9

improved, and under control symptoms, and his admitted activities of daily living." *Id.*

As for LCSW Rainforth's opinion, the ALJ found it unpersuasive because it "appeared to be based upon [Plaintiff's] reports alone, rather than objective evidence." *Id.* The ALJ also concluded that LCSW Rainforth's opinion was "not consistent with Dr. Cartagena's largely unremarkable mental status examination results or her statements that medications were working well to control [Plaintiff's] symptoms, he was able to tolerate daily stressors, and his focus and intention were intact." Tr. 25–26. And the ALJ further concluded that LCSW Rainforth's opinion was "not consistent with [Plaintiff's activities of daily living] . . . or [his] admissions of only mild, much improved, and under control symptoms." Tr. 26.

In the Court's view, the ALJ followed the regulations when evaluating Dr. Cartagena's and LCSW Rainforth's opinions. *See* 20 C.F.R. § 404.1520c. Plaintiff's arguments to the contrary boil down to disagreements with the ALJ's weighing of the evidence, and "it is not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled." *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").

10

Second, Plaintiff argues that the ALJ failed in his duty to develop the record because there was an obvious gap in LCSW Rainforth's treatment records.  *See* Dkt. 11-1 at 29–30.  Due to the non-adversarial nature of a benefits proceeding, "the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  That duty is not limitless: "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information." *See Rosa*, 168 F.3d at 79 n.5 (citation modified).

Here, the ALJ did not have an affirmative obligation to seek any additional treatment records from LCSW Rainforth because those records were not a part of Plaintiff's "complete medical history." *See* 20 C.F.R. § 404.1512(b)(1)(i) (explaining that a claimant's "complete medical history means the records of [his or her] medical source(s) covering at least the 12 months preceding the month in which [her or she filed their] application."); *see also id.* § 404.1502(a) (list of acceptable medical sources does not include licensed social workers).  What is more, during the administrative hearing, Plaintiff's counsel told the ALJ that the administrative record was complete, *see* Tr. 36, and the ALJ was entitled to rely on that representation, *see, e.g., Dejesus Gonzalez v. Comm'r of Soc. Sec.*, 2017 WL 1051119, at *4 (E.D.N.Y. Mar. 19, 2017) ("An ALJ will generally be found to have breached his duty where there were obvious deficiencies in the record[;] [i]f plaintiff's attorney wanted to come up with a creative theory on how there might be more documents, he needed to have done it before the ALJ, not in a review proceeding.").

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 15) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 11).  The Clerk of the Court will close this case.


SO ORDERED.


Dated:      May 11, 2026
           Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE